**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

———————————————————————

SECURITES AND EXCHANGE COMMISSION,

                    Applicant,

              v.

INFINITE REALITY, INC.,

                 Respondent.

No.

———————————————————————

**APPLICATION FOR ORDER TO SHOW CAUSE AND**
**FOR ORDER TO COMPLY WITH ADMINISTRATIVE SUBPOENA**

Respondent Infinite Reality, Inc. ("Infinite Reality or "Respondent") has failed to comply with a subpoena issued by the staff of the Securities and Exchange Commission ("SEC" or "Commission") seeking documents and testimony of a custodian of records in connection with the Commission's investigation entitled *In the Matter of Newbury Street Acquisition Corp.* (File No. B-03749) (the "Investigation"). The Commission issued the subpoena on December 5, 2024, and made numerous attempts to achieve compliance. However, Infinite Reality, after indicating that it would produce responsive documents, has not responded to Commission staff since January 17, 2025 and has not produced any documents or witness to testify. Infinite Reality has not sought to quash the subpoena and it has not asserted any basis for its noncompliance. The Commission therefore respectfully submits this application for the Court to issue: (1) an order to show cause why Respondent should not comply with the administrative subpoena; and (2) an Order compelling Respondent to produce documents and provide the testimony of a custodian of records. A Proposed Order is attached hereto.

**BACKGROUND**

**The Investigation**

The Investigation centers on a potential business combination between Newbury Street Acquisition Corp. ("Newbury Street"), a Massachusetts-based special purpose acquisition blank check company ("SPAC") formed for the purpose of entering into a merger, capital stock or share exchange, asset acquisition, stock purchase, recapitalization, reorganization, or other similar business combination with one or more businesses or entities. [Declaration of William J. Durkin ¶2.] Newbury Street's stock is currently quoted on the over-the-counter market and was quoted on Nasdaq until it was delisted in September 2024. [*Id.*]

In December 2022, Newbury Street announced that it had executed an agreement and plan of merger with Connecticut-based Infinite Reality, which develops immersive virtual reality (also known as "metaverse") technology. [*Id.*] Newbury Street initially had a deadline of March 25, 2023 to consummate an initial business combination (24 months from the closing of its initial public offering of stock (also known as an IPO), which occurred in March 2021). [*Id.* ¶7.] Since then, Newbury Street has extended that deadline four times. It most recently extended it in September 2024, with the approval of shareholders, to March 25, 2025. [*Id.*] In December 2024, Newbury Street and Infinite Reality mutually terminated the merger agreement. [*Id.*]

At the time of the merger announcement, Newbury Street attached to an SEC Form 8-K filed with the Commission a press release from Infinite Reality stating that the combined company would be valued at approximately $1.85 billion. [*Id.* ¶8.] Since then, Newbury Street has incorporated in its filings with the Commission additional purported valuations of Infinite Reality. In July 2024, it claimed that Infinite Reality's valuation was $5.1 billion. [*Id.*]

On November 24, 2024, pursuant to Section 20(a) of the Securities Act of 1933

("Securities Act") and Section 21(a) of the Securities Exchange Act of 1934 ("Exchange Act"), the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony ("Formal Order") in the Investigation.  [*Id.* ¶3 & Ex. 1.]  Among other things, the Formal Order directed that an investigation be undertaken to determine whether certain persons or entities had violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, or Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder, in connection with the offer, purchase, or sale of securities in Newbury Street or in connection with the filing of certain reports with the Commission.  [*Id.*]

The Formal Order designated certain officers of the Commission as having power to subpoena witnesses for documents and testimony.  [*Id.* ¶4 & Ex. 1.]

Pursuant to the Formal Order, the Commission staff is investigating whether Newbury Street, Infinite Reality, and/or any individuals have inflated the valuation of Infinite Reality, engaged in improper issuer reporting, or otherwise misled investors about Newbury Street's potential acquisition of Infinite Reality in violation of the antifraud, financial reporting, or other provisions of the securities laws.  [*Id.* ¶9.]

During the Investigation, the Commission has obtained information showing that certain individuals and/or entities may have been or may be, among other things, making false statements of material fact and omitting to disclose material facts to investors.  [*Id.* ¶5.]  The statements at issue concern, among other things, the valuation of Newbury Street following the anticipated consummation of Newbury Street's initial business combination with Infinite Reality. [*Id.*]  Further, certain individuals and/or entities may have been or may be filing or causing to be filed with the Commission annual reports on SEC Form 10-K, current reports on SEC Form 8-K,

3

quarterly reports on SEC Form 10-Q, and amendments thereto that may have contained or may contain false statements of material fact or may have omitted or may omit to state material facts necessary, or may have failed to add such further material information as may be necessary, in order to make the statements made, in the light of the circumstances under which they were or are made, not misleading.  [*Id.*]

### The Commission's Voluntary Request to Infinite Reality

The staff sent a voluntary request for documents to Infinite Reality on September 6, 2024. On September 27, 2024, the staff spoke with Infinite Reality's chief legal officer and outside counsel for Infinite Reality.  [*Id.* ¶10.]  Counsel requested an extension to respond to October 25, 2024, which Infinite Reality's chief legal officer confirmed in an email following the call.  [*Id.*] Although counsel framed this request as an "extension," the staff did not tell Infinite Reality that it was compelled to respond to the voluntary request.  [*Id.*]

Infinite Reality produced no documents by October 25, 2024 and gave no notice to the staff.  [*Id.* ¶11.]

On October 28, 2024, the staff emailed Infinite Reality's chief legal officer and outside counsel about the status of Infinite Reality's production.  Neither responded to the email.  [*Id.* ¶12.]

On October 31, 2024, the staff emailed Infinite Reality's chief legal officer and outside counsel again.  Neither responded to the email.  [*Id.* ¶13.]

On November 14, 2024, outside counsel for Infinite Reality called the staff and said that the company needed more time to collect documents and further indicated that it would produce documents by November 30, 2024.  [*Id.* ¶14.]

Separately, also on November 14, 2024, outside counsel emailed the staff, copying

Infinite Reality's chief legal officer.  Outside counsel said that Infinite Reality's chief legal officer "has been in the process of putting together the requested documents and has made good progress, but unfortunately life and work got in the way to slow down the process.  The Company's legal department is a very small operation with very limited resources, and that's the reason for the delay."  [*Id.* ¶15.]  Counsel said that the company needed until November 30, 2024 to produce documents.  However, Infinite Reality did not produce any documents by that date. [*Id.*]

**The Commission's Subpoena to Infinite Reality**

On December 5, 2024, based on the subpoena authority under the Formal Order, the staff issued a subpoena for documents and testimony addressed to Infinite Reality's custodian of records.  [*Id.* ¶16 & Ex. 2.]  The subpoena sought the following categories of documents for the period January 1, 2022 through December 5, 2024:

1.  All Documents and Communications Concerning the valuation of Infinite Reality or the post-merger valuation of a proposed business combination of Newbury Street and Infinite Reality, as originally publicly announced by Newbury Street and Infinite Reality on or about December 12, 2022, and as periodically amended thereafter. Please include in your production all Documents and Communications supporting or in any way Concerning valuation.

2.  All Documents and Communications Concerning any extensions of the deadline for the consummation of the business combination of Newbury Street and Infinite Reality described in Request 1 and the reasons for such extensions.

3.  All Documents and Communications Concerning the likelihood of consummation of the business combination of Newbury Street and Infinite Reality described in Request 1.

4.  All Communications to investors or prospective investors of Newbury Street.

[*Id.* Ex. 2.]

The subpoena further directed Infinite Reality to produce documents by December 12, 2024 and to appear before officers of the Commission for testimony on December 19, 2024.  [*Id.* ¶16.]  The staff served the subpoena by email to Infinite Reality's outside counsel on December 5, 2024, and copied Infinite Reality's chief legal officer on the email.  [*Id.*]

After receiving the subpoena, on December 5, 2024, outside counsel for Infinite Reality responded via email to the staff and said, "I forwarded it to the Company and am following up with them to make sure that they received it."  [*Id.* ¶17.]

On December 9, 2024, outside counsel emailed the staff and stated that "this matter is being handled by a different counsel."  [*Id.* ¶18.]

On December 9, 2024, the staff spoke with different outside counsel on behalf of Infinite Reality who told the staff they were engaged only for purposes of the phone call.  [*Id.* ¶19.]  The staff spoke with the same outside counsel on December 11, 2024.  [*Id.*]  Counsel did not request an extension of the subpoena deadlines during either call.  [*Id.*]

On December 13, 2024, outside counsel asked that the staff send a link for a secure file transfer directly to Infinite Reality's chief legal officer for purposes of uploading Infinite Reality's subpoena response.  [*Id.* ¶20.]  A staff paralegal sent Infinite Reality's chief legal officer a link to the Commission's Kiteworks/Accellion file transfer platform via email on the same day.  [*Id.*]  However, Infinite Reality did not upload any documents through the platform. [*Id.*]

On December 19, 2024, no witness on behalf of Infinite Reality appeared for testimony. [*Id.* ¶21.]

On December 23, 2024, outside counsel with whom the staff had spoken on December 13 said that it had not been engaged to assist Infinite Reality with its subpoena response and that the

contact at Infinite Reality going forward should be Infinite Reality's chief legal officer.  [*Id.* ¶22.]

On January 13, 2025, the staff called Infinite Reality's chief legal officer and left a voicemail.  [*Id.* ¶23.]  The staff followed up with an email to Infinite Reality's chief legal officer attaching a copy of the subpoena.  [*Id.*]

On January 17, 2025, Infinite Reality's chief legal officer responded to the staff's January 13, 2025 email and said, "we intend to provide these.  We ran into a last-minute hiccup with Bates numbering this week, and I intend to share a secure file transfer over the weekend. My sincere apologies that this has drawn out."  [*Id.* ¶24.]  Despite Infinite Reality's chief legal officer's email, Infinite Reality did not produce any documents on or after January 17, 2025. [*Id.*]

On January 21, 2025, the staff emailed Infinite Reality's chief legal officer, "We did not see any documents come in from Infinite Reality over the weekend as you represented in your email below.  Please provide an update by COB today, including (1) the timing of Infinite Reality's document production and (2) whether it will be a complete response to the document portion of the subpoena dated December 5, 2024."  [*Id.* ¶25.]  Infinite Reality's chief legal officer did not respond to the email.  [*Id.*]

On January 21, 2025, the staff sent a second email to Infinite Reality's chief legal officer, "Additionally, I write to remind you of Infinite Reality's obligation to preserve, and not destroy, any materials potentially responsive to our subpoena dated December 5, 2024.  This includes without limitation any documents, electronically stored information, or other materials within Infinite Reality's possession, custody, or control.  Further, as part of your obligation to preserve potentially responsive information, you must suspend any routine document deletion processes

that may be in place." [*Id.* ¶26.]  Infinite Reality's chief legal officer did not respond to the email.  [*Id.*]

On January 28, 2025, the staff emailed Infinite Reality's chief legal officer, "When can we expect to receive Infinite Reality's documents?  As you know, they have been under subpoena since December 5, 2024, and you committed on behalf of Infinite Reality to produce them over the weekend of January 18-19, 2024 [sic]."  [*Id.* ¶27.]  Infinite Reality's chief legal officer did not respond to the email.  [*Id.*]

On February 4, 2025, the staff emailed Infinite Reality's chief legal officer, "We continue to await Infinite Reality's subpoena response as well as a response from you as to when this week you are available for a phone call to discuss Infinite Reality's delay and non-compliance with the subpoena."  [*Id.* ¶28.]  Infinite Reality's chief legal officer did not respond to the email.  [*Id.*]

The staff has had no communications with Infinite Reality's chief legal officer or Infinite Reality's outside counsel since January 17, 2025.  [*Id.* ¶29.]  To date, Infinite Reality has neither produced documents nor has a designated custodian of records appeared for testimony pursuant to the December 5, 2024 subpoena.  [*Id.*]

## **ARGUMENT**

### I.  THIS COURT HAS JURISDICTION TO ENFORCE SEC SUBPOENAS IN A SUMMARY PROCEEDING

Congress gave the SEC statutory authority to investigate possible violations of the securities laws.  Section 21(a) of the Exchange Act provides that the SEC "may, in its discretion, make such investigations as it deems necessary to determine whether any person has violated, is violating, or is about to violate [the Exchange Act]."  15 U.S.C. § 78u(a).  Section 20(a) of the

Securities Act provides that where it appears to the SEC that the Securities Act or rules or regulations thereunder "have been or about to be violated," it may "investigate such facts." 15 U.S.C. § 77t(a). As part of such investigations, the SEC staff who are designated as officers of the SEC for purposes of the investigation may, among other things, subpoena documents and testimony. 15 U.S.C. § 78u(b); 15 U.S.C. § 77s(c); *see also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984) ("Congress has vested the SEC with broad authority to conduct investigations into possible violations of the federal securities laws and to demand production of evidence relevant to such investigations.") (citations omitted).

The securities laws expressly give this Court jurisdiction over subpoena enforcement actions. *See* 15 U.S.C. § 78u(c); 15 U.S.C. § 77v(b). More specifically, Section 21(c) of the Exchange Act and Section 22(b) of the Securities Act authorize the United States district court where the Commission is carrying on an investigation to enforce the Commission's subpoenas. 15 U.S.C. § 78u(c) ("In the case of contumacy by, or refusal to obey a subpoena issued to, any person, the Commission may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on . . . in requiring the attendance and testimony of witnesses and the production of books, papers, correspondence, memoranda, and other records."); 15 U.S.C. § 77v(b) ("In case of contumacy or refusal to obey a subpoena issued to any person, any of the said United States courts, within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides, upon application by the Commission may issue to such person an order requiring such person to . . . produce documentary evidence if so ordered . . . .").

The securities laws also authorize the SEC to seek an order from this Court requiring compliance with a subpoena in a summary proceeding. *See* 15 U.S.C. § 78u(e); 15 U.S.C.

9

§ 77t(c); Fed. R. Civ. P. 81(a)(5); *see also SEC v. McCarthy*, 322 F.3d 650, 658 (9th Cir. 2003)

(summary proceedings are appropriate for SEC subpoena enforcement actions); *SEC v. Sprecher*,

594 F.2d 317, 319-20 (2d Cir. 1979) (same); *SEC v. Harman Wright Group, LLC*, 18-mc-00190-

CMA, 2018 WL 6102758, at *2 (D. Colo. Nov. 21, 2018) (compelling compliance with SEC

administrative subpoenas).  Accordingly, the SEC requests the Court promptly hear and rule on

the SEC's application to avoid further delay in the investigation.  *SEC v. First Sec. Bank*, 447

F.2d 166, 168 (10th Cir. 1971) ("Questions concerning agency subpoenas should be promptly

determined so that the subpoenas, if valid, may be speedily enforced.") (citing *United States v.

Davey*, 426 F.2d 842, 845 (2d Cir. 1970)).

## II.  THE COURT SHOULD ENFORCE THE SUBPOENA

To enforce an administrative subpoena, a court must be satisfied that: (1) the inquiry is

being conducted for a proper purpose; (2) the subpoena was issued in accordance with the

required administrative procedures; and (3) the information sought is relevant to that legitimate

purpose.  *See, e.g.*, *United States v. Powell*, 379 U.S. 48, 57-58 (1964) (enforcing administrative

subpoena); *SEC v. Howatt*, 525 F.2d 226, 229 (1st Cir. 1975) (applying the *Powell* standard and

enforcing SEC administrative subpoena in District of Massachusetts).

Once the Commission meets these criteria, the Respondent bears the burden of

establishing that the Commission's purpose was unlawful or its subpoena unreasonable.  *SEC v.

Arthur Young & Co.*, 584 F.2d 1018 (D.C. Cir. 1978) (enforcing SEC subpoena when respondent

did not demonstrate that subpoena was an unreasonable burden); *Howatt*, 525 F.2d at 229

(enforcing SEC subpoena where respondent did not demonstrate that agency was acting in bad

faith); *SEC v. Murray Dir. Affiliates, Inc.*, 426 F. Supp. 684, 687 (S.D.N.Y. 1976) (applying

*Powell* and enforcing SEC subpoena when "it would not be abusive for this court to compel

10

compliance with the subpoena.").

The First Circuit has recognized that Congress committed securities investigations to the Commission and "it is not the court's role to intrude into the [Commission's] function." *Howatt*, 525 F.2d at 229. As a result, the Respondent's burden of showing unreasonableness "is not easily met." *SEC v. Brigadoon Scotch Dist. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973) (refusing respondent's request for the court to determine whether subject of inquiry was within SEC's jurisdiction and enforcing SEC subpoena where the inquiry was for a legitimate purpose and the information sought was relevant to the inquiry). Here, the Commission's subpoena satisfies all applicable standards, and Respondent cannot meet its burden of demonstrating that the Commission's actions are unreasonable or unlawful.

### A.    The Commission's inquiry is for a proper purpose.

Section 21(a) of the Exchange Act and Section 20(a) of the Securities Act authorize the Commission to conduct investigations into possible violations of the federal securities laws. This investigation is being conducted pursuant to the Formal Order issued by the Commission pursuant to those Sections. Accordingly, this investigation is lawful and falls within the scope of authority that Congress has granted to the Commission. *See SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980) (recognizing the scope of Commission's authority under § 21(a) of the Exchange Act).

### B.    The subpoena satisfies all administrative requirements.

The subpoena issued to Respondent satisfies all applicable administrative requirements. Pursuant to Section 21(b) of the Exchange Act, officers designated by the Commission are empowered to subpoena witnesses and require the production of relevant evidence. The staff of the Commission's Boston Regional Office issued the subpoena to the Respondent and was

specifically empowered by the Formal Order with authority to subpoena witnesses and
documents in connection with this investigation.  The subpoena was served by email to Infinite
Reality's outside counsel, who acknowledged receipt and said he forwarded the subpoena to the
company.

      **C.**      **The Commission is seeking relevant information.**

For purposes of subpoena enforcement, relevance is established when the information
sought is not "plainly incompetent or irrelevant for any lawful purpose."  *Arthur Young & Co.*,
584 F.2d at 1029 (citing *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943)).  The
court in *Arthur Young* held that "the test is relevance to the specific purpose, and the purpose is
determined by the investigators."  *Id.* at 1031.

Here, the information sought by the Commission is relevant to the Commission's
ongoing investigation of potential securities laws violations, as set forth above.  Specifically, the
requested documents bear on the valuation and other aspects of the proposed business
combination between Infinite Reality and Newbury Street.  Infinite Reality was a party to that
proposed transaction and, as set forth above, has indicated that it would produce responsive
materials.

      **D.**      **Infinite Reality should be compelled to produce documents and witness
testimony.**

As set forth above, Infinite Reality has had ample opportunity to provide the subpoenaed
documents and testimony, first on a voluntary basis, and then in response to the Commission's
December 5, 2024 subpoena.  Despite numerous communications and attempts to accommodate
Infinite Reality's counsel, neither documents nor testimony have been forthcoming.  More than
two months have elapsed since the subpoena issued, and Infinite Reality has "gone dark" by

failing to respond to multiple communications from Commission staff. Infinite Reality has never asserted any impediment to producing the requested documents or appearing for testimony and should now be compelled to promptly comply with the subpoena.

## **CONCLUSION**

For the foregoing reasons, the Commission respectfully requests that the Court issue: (1) an order to show cause, if any exists, why Respondent should not comply with the administrative subpoena; and (2) an Order compelling Respondent to produce documents and provide the testimony of a custodian of records.

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION

By its attorneys,

*/s/ Alfred A. Day*
Alfred A. Day (Mass. BBO No. 654436)
Senior Trial Counsel
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA 02110
(617) 573-8900 (Main)
(617) 573-4590 (Facsimile)
daya@ sec.gov

13