# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) <br> ) <br> ) |
| Applicant, | ) No. <br> ) |
| v. | ) <br> ) |
| INFINITE REALITY, INC., | ) <br> ) |
| Respondent. | ) <br> ) |

## DECLARATION OF WILLIAM J. DURKIN

I, William J. Durkin, Esq., pursuant to 28 U.S.C. § 1746, hereby declare that:

1. I am an attorney and a member in good standing of the bar of the Commonwealth of Massachusetts. I am a Counsel in the Enforcement Division of the Boston Regional Office of the U.S. Securities and Exchange Commission (the "Commission"). I am participating in a Commission investigation titled In the Matter of Newbury Street Acquisition Corp. (B-03749) (the "Investigation") that began on or around May 22, 2024. I make this declaration in support of the Commission's Application for Order to Show Cause and for Order to Comply with Administrative Subpoena.

2. This declaration is based upon information that the Commission staff has obtained from various sources, described more fully below. The Investigation centers on a potential business combination between Newbury Street Acquisition Corp. ("Newbury Street"), a Massachusetts-based special purpose acquisition blank check company ("SPAC") formed for the purpose of entering into a merger, capital stock or share exchange, asset acquisition, stock purchase, recapitalization, reorganization, or other similar business combination with one or more businesses or entities. Newbury Street's stock is currently quoted on the over-the-counter

market and was quoted on Nasdaq until it was delisted in September 2024. In December 2022, Newbury Street announced that it had executed an agreement and plan of merger with Connecticut-based Infinite Reality, Inc. ("Infinite Reality"). Infinite Reality develops immersive virtual reality (also known as "metaverse") technology.

The Investigation

3. On November 24, 2024, pursuant to Section 20(a) of the Securities Act of 1933 ("Securities Act") and Section 21(a) of the Securities Exchange Act of 1934 ("Exchange Act"), the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony ("Formal Order") in the Investigation. Among other things, the Formal Order directed that an investigation be undertaken to determine whether certain persons or entities had violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, or Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder, in connection with the offer, purchase, or sale of securities in Newbury Street or in connection with the filing of certain reports with the Commission.

4. The Formal Order designated certain officers of the Commission as having power to subpoena witnesses for documents and testimony. See Exhibit 1.

5. In the course of the Investigation, the Commission has obtained information showing that certain individuals and/or entities may have been or may be, among other things, making false statements of material fact and omitting to disclose material facts to investors. The statements at issue concern, among other things, the valuation of Newbury Street following the anticipated consummation of Newbury Street's initial business combination with Infinite Reality. Further, certain individuals and/or entities may have been or may be filing or causing to be filed with the Commission annual reports on Form 10-K, current reports on Form 8-K,

quarterly reports on Form 10-Q, and amendments thereto that may have contained or may contain false statements of material fact or may have omitted or may omit to state material facts necessary, or may have failed to add such further material information as may be necessary, in order to make the statements made, in the light of the circumstances under which they were or are made, not misleading.

6. Based on the foregoing, the Investigation concerns potential violations of antifraud, issuer reporting, and other provisions of the securities laws by Newbury Street.

7. In December 2022, Newbury Street announced that it had executed an agreement and plan of merger with Infinite Reality. Newbury Street initially had a deadline of March 25, 2023 to consummate an initial business combination (24 months from the closing of its initial public offering of stock (also known as an IPO), which occurred in March 2021). Since then, Newbury Street has extended that deadline four times. It most recently extended it in September 2024, with the approval of shareholders, to March 25, 2025. In December 2024, Newbury Street and Infinite Reality mutually terminated the merger agreement.

8. At the time of the merger announcement, Newbury Street attached to a Form 8-K filed with the Commission a press release from Infinite Reality stating that the combined company would be valued at approximately $1.85 billion. Since then, Newbury Street has incorporated in its filings with the Commission additional purported valuations of Infinite Reality. In July 2024, it claimed that Infinite Reality's valuation was $5.1 billion.

9. The Commission staff is investigating whether Newbury Street, Infinite Reality, and/or any individuals have inflated the valuation of Infinite Reality, engaged in improper issuer reporting, or otherwise misled investors about Newbury Street's potential acquisition of Infinite

Reality in violation of the antifraud, financial reporting, or other provisions of the securities laws.

The Commission's Voluntary Request to Infinite Reality

10. The Commission staff sent a voluntary request for documents to Infinite Reality on September 6, 2024. On September 27, 2024, the staff spoke with Infinite Reality's chief legal officer and outside counsel for Infinite Reality. Counsel requested an extension to respond to October 25, 2024, which Infinite Reality's chief legal officer confirmed in an email following the call. Although counsel framed this request as an "extension," the staff did not tell Infinite Reality that it was compelled to respond to the voluntary request.

11. Infinite Reality produced no documents by October 25, 2024 and gave no notice to the staff.

12. On October 28, 2024, the staff emailed Infinite Reality's chief legal officer and outside counsel about the status of Infinite Reality's production. Neither responded to the email.

13. On October 31, 2024, the staff emailed Infinite Reality's chief legal officer and outside counsel again. Neither responded to the email.

14. On November 14, 2024, outside counsel for Infinite Reality called me and said that the company needed more time to collect documents and further indicated that it would produce documents by November 30, 2024.

15. Separately, also on November 14, 2024, outside counsel emailed the staff, copying Infinite Reality's chief legal officer. Outside counsel said that Infinite Reality's chief legal officer "has been in the process of putting together the requested documents and has made good progress, but unfortunately life and work got in the way to slow down the process. The Company's legal department is a very small operation with very limited resources, and that's

the reason for the delay." Counsel said that the company needed until November 30, 2024 to produce documents. However, Infinite Reality did not produce any documents by that date.

The Commission's Subpoena to Infinite Reality

16. On December 5, 2024, based on the subpoena authority under the Formal Order, the Commission issued a subpoena for documents and testimony addressed to Infinite Reality's Custodian of Records. The subpoena directed Infinite Reality to produce documents by December 12, 2024 and to appear before officers of the Commission for testimony on December 19, 2024. See Exhibit 2. The staff served the subpoena by email to Infinite Reality's outside counsel on December 5, 2024, and copied Infinite Reality's chief legal officer on the email.

17. After receiving the subpoena, on December 5, 2024, outside counsel for Infinite Reality responded via email to the staff and said, "I forwarded it to the Company and am following up with them to make sure that they received it."

18. On December 9, 2024, outside counsel emailed the staff and stated that "this matter is being handled by a different counsel."

19. On December 9, 2024, the staff spoke with different outside counsel on behalf of Infinite Reality who told the staff they were engaged only for purposes of the phone call. The staff spoke with the same outside counsel on December 11, 2024. Counsel did not request an extension of the subpoena deadlines during either call.

20. On December 13, 2024, outside counsel asked that the staff send a link for a secure file transfer directly to Infinite Reality's chief legal officer for purposes of uploading Infinite Reality's subpoena response. A staff paralegal sent Infinite Reality's chief legal officer a link to the Commission's Kiteworks/Accellion file transfer platform via email on the same

day. However, Infinite Reality did not upload any documents through the platform.

21. On December 19, 2024, no witness on behalf of Infinite Reality appeared for testimony.

22. On December 23, 2024, outside counsel with whom the staff spoke on December 13, 2024 said that it had not been engaged to assist Infinite Reality with its subpoena response and that the contact at Infinite Reality going forward should be Infinite Reality's chief legal officer.

23. On January 13, 2025, the staff called Infinite Reality's chief legal officer and left a voicemail. The staff followed up with an email to Infinite Reality's chief legal officer attaching a copy of the subpoena.

24. On January 17, 2025, Infinite Reality's chief legal officer responded to the staff's January 13, 2025 email and said, "we intend to provide these. We ran into a last-minute hiccup with Bates numbering this week, and I intend to share a secure file transfer over the weekend. My sincere apologies that this has drawn out." Despite Infinite Reality's chief legal officer's email, Infinite Reality did not produce any documents on or after January 17, 2025.

25. On January 21, 2025, the staff emailed Infinite Reality's chief legal officer, "We did not see any documents come in from Infinite Reality over the weekend as you represented in your email below. Please provide an update by COB today, including (1) the timing of Infinite Reality's document production and (2) whether it will be a complete response to the document portion of the subpoena dated December 5, 2024." Infinite Reality's chief legal officer did not respond to the email.

26. On January 21, 2025, the staff sent a second email to Infinite Reality's chief legal officer, "Additionally, I write to remind you of Infinite Reality's obligation to preserve, and not

destroy, any materials potentially responsive to our subpoena dated December 5, 2024. This includes without limitation any documents, electronically stored information, or other materials within Infinite Reality's possession, custody, or control. Further, as part of your obligation to preserve potentially responsive information, you must suspend any routine document deletion processes that may be in place." Infinite Reality's chief legal officer did not respond to the email.

27. On January 28, 2025, the staff emailed Infinite Reality's chief legal officer, "When can we expect to receive Infinite Reality's documents? As you know, they have been under subpoena since December 5, 2024, and you committed on behalf of Infinite Reality to produce them over the weekend of January 18-19, 2024 [sic]." Infinite Reality's chief legal officer did not respond to the email.

28. On February 4, 2025, the staff emailed Infinite Reality's chief legal officer, "We continue to await Infinite Reality's subpoena response as well as a response from you as to when this week you are available for a phone call to discuss Infinite Reality's delay and non-compliance with the subpoena." Infinite Reality's chief legal officer did not respond to the email.

29. The staff has had no communications with Infinite Reality's chief legal officer or Infinite Reality's outside counsel since January 17, 2025. To date, Infinite Reality has neither produced documents nor has a designated custodian of records appeared for testimony pursuant to the December 5, 2024 subpoena.

Executed this 26 day of February, 2025, in Boston, Massachusetts.

                                          */s/ William J. Durkin*
                                          William J. Durkin, Esquire